PATRICK K. McGINTY, Plaintiff-Appellee, v. NORFOLK SOUTHERN RAILWAY COMPANY, Defendant-Appellant.

Fifth District   No. 5—04—0683

Opinion filed November 3, 2005.

DONOVAN, P.J., dissenting.

Kurt E. Reitz and Heath Hooks, both of Thompson Coburn, L.L.P., of Belleville, for appellant.

David R. Jones and Christie R. Schmieder, both of Pratt & Tobin, P.C., of East Alton, for appellee.

JUSTICE McGLYNN delivered the opinion of the court:

Norfolk Southern Railway Company (Norfolk Southern) appeals from the trial court's September 29, 2004, denial of its motion to dismiss on the basis of interstate *forum non conveniens*. On December 2, 2004, we granted Norfolk Southern's petition for leave to appeal pursuant to Supreme Court Rule 306(a)(2) (166 Ill. 2d R. 306(a)(2)). There is no dispute that venue in Madison County, Illinois, is proper, because Norfolk Southern does business in Madison County. See 45 U.S.C. § 56 (2000). On appeal, Norfolk Southern argues that there is no connection between the claim filed and Madison County, Illinois, and that, therefore, under the doctrine of interstate *forum non conveniens*, the claim should have been dismissed.

The plaintiff, Patrick K. McGinty (McGinty), alleges repetitive-trauma injuries to his back, neck, shoulders, and knees. He claims that these injuries occurred over the 30-year duration of his employment with Norfolk Southern, for whom he worked as a laborer/machinist and special agent. McGinty filed his claim in Madison County circuit court pursuant to provisions of the Federal Employers' Liability Act (45 U.S.C. § 51 *et seq.* (2000)).

McGinty resides in Liberty, Missouri, a community close to Kansas City. At no time during his Norfolk Southern employment did McGinty live in Madison County or anywhere else in Illinois. McGinty alleges that there was a brief period of time during which he performed Norfolk Southern work in Madison County. In essence, McGinty claims that because his injuries are of a repetitive type and because he did work at least some period of time in Madison County, at least some of his injuries occurred in Madison County. During his deposition, McGinty was unable to specifically tie his injuries to any one accident, incident, or other reportable condition that occurred during his Madison County employment.

In his 30-year employment history, McGinty worked out of Moberly, Missouri, Wentzville, Missouri, St. Louis, Missouri, and Kansas City, Missouri. The Madison County work took place during the time frame when McGinty worked out of St. Louis, Missouri, and, while not specified, did take place more than 15 years ago. Neither party has any witnesses located in Madison County, or anywhere else in Illinois. All of McGinty's treating physicians or other healthcare

providers are located in the Kansas City, Missouri, area. He alleged that the pain and/or physical problems with which he suffered were not present when he worked out of St. Louis, Missouri, but did show up over, approximately, the last 13-year period when he worked out of Kansas City.

Norfolk Southern filed its *forum non conveniens* motion seeking to have the case dismissed, arguing that the case would be more properly filed in Jackson County, Missouri. The trial court's September 29, 2004, order denying the motion simply states, "The motion is hereby denied." No rationale for the denial was included in the order.

The only issue on appeal is whether or not the trial court erred in reaching its conclusion that allows the case to proceed in Madison County. On appeal from an order granting or denying a motion to dismiss, we must determine whether or not the trial court abused its discretion. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 176-77, 797 N.E.2d 687, 696 (2003); *Ferguson v. Bill Berger Associates, Inc.*, 302 Ill. App. 3d 61, 70, 704 N.E.2d 830, 836-37 (1998).

■ *Forum non conveniens* is essentially an equitable doctrine. *Bland v. Norfolk & Western Ry. Co.*, 116 Ill. 2d 217, 223, 506 N.E.2d 1291, 1294 (1987). The doctrine presumes that there is more than one appropriate forum relative to jurisdiction and venue. *Wieser v. Missouri Pacific R.R. Co.*, 98 Ill. 2d 359, 364, 456 N.E.2d 98, 100 (1983). The trial court retains discretionary power to decline the exercise of jurisdiction and to direct the lawsuit to an alternative forum that would more appropriately serve the parties' convenience. *Washington v. Illinois Power Co.*, 144 Ill. 2d 395, 399, 581 N.E.2d 644, 645 (1991). The convenience of the parties is at the heart of the doctrine. *Hefner v. Owens-Corning Fiberglas Corp.*, 276 Ill. App. 3d 1099, 1101, 659 N.E.2d 448, 451 (1995).

The doctrine of *forum non conveniens* is applicable on both an intrastate basis and an interstate basis. *Dawdy*, 207 Ill. 2d at 176, 797 N.E.2d at 696. The identical concerns of convenience and fairness apply to both types of *forum non conveniens* situations.

■ To determine if the doctrine of *forum non conveniens* applies, a court must balance private-interest factors affecting the convenience of the litigants and public-interest factors impacting the court's administration. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 91 L. Ed. 1055, 1062-63, 67 S. Ct. 839, 843 (1947). The balancing analysis requires an evaluation of the relevant factors in their entirety rather than an emphasis on any single factor. *Peile v. Skelgas, Inc.*, 163 Ill. 2d 323, 336-37, 645 N.E.2d 184, 190 (1994).

Private-interest factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of

unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *Gulf Oil Corp.*, 330 U.S. at 508, 91 L. Ed. at 1062, 67 S. Ct. at 843. Some of the other private-interest factors taken into consideration include the residence of the plaintiff (*Peile*, 163 Ill. 2d at 337-38, 645 N.E.2d at 191) and the complexity of the litigation. *Mowen v. Illinois Valley Supply Co.*, 257 Ill. App. 3d 712, 717, 629 N.E.2d 176, 180 (1994).

Public-interest factors include court congestion, an interest in having "localized controversies decided at home," and the burden of jury duty upon local citizens in an unrelated forum. *Gulf Oil Corp.*, 330 U.S. at 509, 91 L. Ed. at 1063, 67 S. Ct. at 843.

In *Peile v. Skelgas, Inc.*, the Illinois Supreme Court restated its position that *forum non conveniens* remains a viable doctrine, and it reiterated the importance of a flexible consideration of the private- and public-interest factors. *Peile*, 163 Ill. 2d at 336-37, 645 N.E.2d at 190-91. While the court confirmed that the plaintiff's choice is entitled to substantial deference, the court noted that the right is seriously diminished when the forum selected is not his or her county of residence and where the forum is not the situs of the injury. *Peile*, 163 Ill. 2d at 337-38, 645 N.E.2d at 191. No single interest factor should be accorded primary or conclusive emphasis. *Dawdy*, 207 Ill. 2d at 180, 797 N.E.2d at 698, citing *Jones v. Searle Laboratories*, 93 Ill. 2d 366, 373, 444 N.E.2d 157, 160 (1982). Affording major significance to any one of the factors would result in a weakening of the flexibility of the *forum non conveniens* doctrine. *Dawdy*, 207 Ill. 2d at 180, 797 N.E.2d at 698 (relying on *Bland*, 116 Ill. 2d at 227, 506 N.E.2d at 1295 (relying on *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249-50, 70 L. Ed. 2d 419, 432, 102 S. Ct. 252, 263 (1981))). All of the factors must be weighed in their entirety. *Dawdy*, 207 Ill. 2d at 175-76, 797 N.E.2d at 695 (relying on *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 107-08, 554 N.E.2d 209, 212 (1990)).

"In considering an interstate *forum non conveniens* motion filed in a suit pending in an Illinois court, the focus is on Illinois's connections with the litigation and whether the applicable public- and private-interest factors favor Illinois or an appropriate forum in another state." (Emphasis omitted.) *Skidmore v. Gateway Western Ry. Co.*, 333 Ill. App. 3d 947, 950, 776 N.E.2d 333, 336 (2002).

In 2002, the Illinois Supreme Court reaffirmed the doctrine of *forum non conveniens* in *First American Bank v. Guerine*, 198 Ill. 2d 511, 764 N.E.2d 54 (2002). Rather than weighing each factor in determining whether a case should be dismissed, *Guerine*, which was

an intrastate forum case, required an approach in which the court "evaluate[s] the total circumstances of the case," in order to determine if the defendant has proven that the balance of factors strongly favors a transfer. *Guerine*, 198 Ill. 2d at 518, 764 N.E.2d at 59.

■ This case turns on the repetitive nature of McGinty's injuries in that, theoretically at least, some part of his overall injury occurred in Madison County. Madison County would not be the only appropriate forum, however. Following McGinty's argument, any county where he worked throughout the entirety of his railroad career would be proper. The plaintiff's choice of forum is entitled to great deference, and although the deference is somewhat minimized due to the fact that he does not reside in that county, McGinty argues that his choice should still be granted great deference because the injury "occurred" in Madison County.

Norfolk Southern counters with the argument that merely working in Madison County for a short period of time is insufficient to warrant maintaining the case in Madison County. Norfolk Southern distinguishes cases where an actual injury or accident occurred in Madison County, arguing that because McGinty cannot point to one precise incident in Madison County, his injury essentially could not have occurred there. See *Brummett v. Wepfer Marine, Inc.*, 111 Ill. 2d 495, 490 N.E.2d 694 (1986) (the plaintiff suffered a traumatic fall while the vessel on which he worked was docked at Lock Number 26 near Alton, Illinois); *Peterson v. Monsanto Co.*, 181 Ill. App. 3d 677, 537 N.E.2d 1030 (1989) (where a chemical exposure occurred within Madison County, Illinois); *Weaver v. Midwest Towing, Inc.*, 116 Ill. 2d 279, 507 N.E.2d 838 (1987) (injuries resulting from a continuous benzine gas exposure over a short period of time while working on a vessel traveling the upper Mississippi River to and including passage through the Alton Lock and Dam system in Madison County, Illinois).

As stated above, this case turns on an acceptance of the theory that a repetitive injury over the span of an entire career fixes venue and forum in any county that the employee performed so much as one minute of work. If we accept this theory, as the trial court did, then no matter how remote in time the employment at issue was, the "injury" occurred in Madison County. We believe that this stretches the bounds of the *forum non conveniens* doctrine and cannot, at least in this situation, be solely utilized to fix Madison County as an appropriate forum. In a typical injury case where the location of the injury is the forum chosen by the plaintiff, the connection between the county and the injury is significant. The site of the injury and the county's interest in the outcome of the litigation are naturally tied, and complete deference to the plaintiff's choice is virtually automatic, because there is a

presumption that the choice is convenient because the litigation is being decided in its home county. *Skidmore*, 333 Ill. App. 3d at 956, 776 N.E.2d at 340. We understand that, by definition, a repetitive trauma is an injury that occurs over and over again. We are unwilling, however, to equate a repetitive injury to that of a one-time incident, injury, or exposure that more directly ties an injury to a particular county. If we equated the two types of injuries, any truck driver with a repetitive injury could claim Madison County as a convenient forum simply because there are many interstate highways that run through the county and the truck driver at some point in time drove on one of those highways. We will not afford this type of repetitive injury the same deference as accidents and exposures that solely occur in Madison County. To hold otherwise could promote unfavored forum-shopping. *Dawdy*, 207 Ill. 2d at 173-75, 797 N.E.2d at 694-95.

Because McGinty does not remember much of anything relative to his Madison County work history, and due to the nonspecific repetitiveness of the injury and its remoteness in time—more than 15 years ago—we will only afford slight deference to his choice of forum on the basis of the injury situs. Other factual situations may warrant different treatment, but this injury's connection with Madison County is simply too tenuous to receive automatic deference.

We will briefly discuss the relevant private- and public-interest factors.

In this case, the private-interest factors involving the relative ease of access to sources of proof and the availability and cost of obtaining willing and unwilling witnesses can be discussed together. Neither of these private-interest factors favors Madison County. None of the potential witnesses resides in Madison County, or anywhere near Madison County. McGinty and his wife both reside near Kansas City, Missouri. All of McGinty's coworkers reside in or near Kansas City. Seven listed doctors and other medical providers all live and work in and around Kansas City. The employees of McGinty's janitorial business all live near Kansas City. Jackson County, Missouri, is the location of these witnesses, and Jackson County is approximately 265 miles from Madison County, Illinois. The reality is that there would be no "ease of access" to these witnesses, and the cost to bring many or all of them to a trial in Madison County would be quite high.

We must address the possibility of a view of the premises, however remote that likelihood is. *Dawdy*, 207 Ill. 2d at 178-79, 797 N.E.2d at 697. In this situation, a view of the premises could conceivably include whatever location in Madison County where McGinty was occasionally sent to work when he worked out of the St. Louis railroad yard. However, because the injury alleged is a repetitive one with no specific

accident site, it is just as likely that a view could be arranged at any of the Missouri locations where McGinty worked. Any view, if ordered by the trial court, would necessarily be representative of the type of work in which McGinty engaged over the many years of his employment, and not the site of a discrete incident. Consequently, this factor does not support McGinty's forum choice over Jackson County, Missouri.

The only other private-interest factor referenced by McGinty's attorneys favoring the Madison County forum choice was the location of the attorneys' offices—in Madison County and neighboring St. Clair County, Illinois. As the Illinois Supreme Court stated, "While a court may consider this factor, 'little weight should be accorded it.' " *Dawdy*, 207 Ill. 2d at 179, 797 N.E.2d at 697, quoting *Boner v. Peabody Coal Co.*, 142 Ill. 2d 523, 534, 568 N.E.2d 883, 888 (1991). So, although it may be entitled to very little weight, this factor does favor Madison County.

Turning to the public-interest factors, we conclude that the court-congestion factor weighs in favor of Jackson County, Missouri, in that the average time for a trial to proceed from filing to verdict in Madison County was 28.9 months, while the average time in Jackson County, Missouri, was approximately 12 months. Administrative Office of the Illinois Courts, 2002 Annual Report of the Illinois Courts, Statistical Summary 53; Office of State Courts Administrator, 2002 Annual Report Supplement 180 (Missouri).

To the extent that a part of the repetitive injury occurred in Madison County, then the citizens of Madison County would have a very slight interest in deciding the controversy. Given the lack of any other connection to the county, we are unable to say that merely occasionally working in Madison County more than 15 years ago vests the citizens of Madison County with more than a modest interest in the controversy's outcome. We find that in this particular factual situation, jury duty would impose a burden upon the citizens of Madison County.

Evaluating the factors in their totality, we are unable to reach the same conclusion that the trial court reached. We conclude that the factors strongly favor Jackson County, Missouri, over Illinois. Accordingly, we find that the trial court abused its discretion in denying Norfolk Southern's motion to dismiss.

For the foregoing reasons, the judgment of the circuit court of Madison County is hereby reversed, and the cause is dismissed.

Reversed; cause dismissed.

WELCH, J., concurs.

PRESIDING JUSTICE DONOVAN, dissenting:

I respectfully dissent. Although the majority has accurately recited the relevant public- and private-interest factors to be considered in a *forum non conveniens* analysis, its application in this case is troubling.

In its decision, the majority recognizes that this case presents an *interstate forum non conveniens* issue, but it proceeds to conduct an intrastate type of analysis, weighing the relative advantages and obstacles to litigating this case in Madison County, Illinois, versus Jackson County, Missouri. When addressing an interstate *forum non conveniens* motion, the court and the litigants are instructed to focus on Illinois's connections with the litigation and whether the relevant factors favor Illinois over another state. *Kwasniewski v. Schaid*, 153 Ill. 2d 550, 607 N.E.2d 214 (1992); *Lambert v. Goodyear Tire & Rubber Co.*, 332 Ill. App. 3d 373, 377-78, 773 N.E.2d 133, 137 (2002), citing 3 R. Michael, Illinois Practice § 14.1 (1989). In this case, we should consider whether Illinois has any connections with the litigation and whether Missouri is an available forum that can better serve the convenience of the litigants and promote the ends of justice. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 172, 797 N.E.2d 687, 693 (2003).

More troubling is the majority's decision to "afford slight deference" to the plaintiff's choice of a forum based on its analysis of "the injury situs." 362 Ill. App. 3d at 939. The majority concludes that the plaintiff's choice of forum should be afforded slight deference because each of his injuries is a cumulative-effects injury rather than "a one-time incident, injury, or exposure that more directly ties [the] injury to a particular county" and because the plaintiff was unable to recall a specific incident or trauma that occurred in Madison County. 362 Ill. App. 3d at 939. The majority's pronouncement creates a previously unrecognized subfactor which is ill-defined and will likely invite a new wave of the type of litigation quagmire that Justice William Lewis warned about in *Peile v. Skelgas, Inc.*, 242 Ill. App. 3d 500, 522, 610 N.E.2d 813, 829 (1993) (Lewis, J., specially concurring). Armed with this decision, adversaries will engage in endless battles over additional forms of minutiae, namely: (1) estimates and supposition regarding the frequency, the severity, and the significance of the trauma suffered by a railroad worker at a given location that is necessary to constitute a *bona fide* "injury situs" and (2) what range of deference (slight, moderate, substantial) is properly afforded to the chosen forum based on each cumulative-trauma case.

By definition, the cumulative-effects injuries suffered by laborers result from a series of microtraumas with a gradual and often imperceptible onset of symptoms that eventually lead to dysfunction.

See generally *Peoria County Belwood Nursing Home v. Industrial Comm'n*, 115 Ill. 2d 524, 505 N.E.2d 1026 (1987) (the recognition of a compensable accidental injury where a worker's physical structure gives way under the repetitive stresses of work-related tasks). Therefore, that the plaintiff in this case is unable to point to one specific incident or injury that occurred in Illinois should be of no surprise. In reviewing the record, I found no indication that the plaintiff described the occurrence of a specific traumatic event in Missouri either. Nevertheless, the record does show that the plaintiff was assigned to the Luther yard in St. Louis, Missouri, for more than a year, and while there, he spent a significant amount of time patrolling and surveilling the railroad's properties and assets in Illinois. The plaintiff testified that while working in and near Illinois yards, he was exposed to uneven ballasts, uneven terrain, and holes in the yards that were not visible due to poor lighting and that he twisted his knees while walking in those conditions. The plaintiff also testified that he was required to pull himself up on railcars in order to inspect them and that these conditions contributed to his shoulder injuries. For purposes of a *forum non conveniens* analysis, the plaintiff's testimony is sufficient to show that his injuries were sustained, in part, during his work in Illinois. Accordingly, the plaintiff's chosen forum is entitled to substantial deference. *Dawdy*, 207 Ill. 2d at 173, 797 N.E.2d at 694; *First American Bank v. Guerine*, 198 Ill. 2d 511, 517-18, 764 N.E.2d 54, 59 (2002); *Brummett v. Wepfer Marine, Inc.*, 111 Ill. 2d 495, 499-500, 490 N.E.2d 694, 697 (1986).

Before the plaintiff can be deprived of his chosen forum, the balance of the public- and private-interest factors must strongly favor a dismissal of the pending case on the grounds that Missouri can better serve the parties and promote the ends of justice. *Guerine*, 198 Ill. 2d at 518, 764 N.E.2d at 59. The plaintiff is a Missouri resident. The railroad is not a resident of Missouri or Illinois, but it does have personal and real property in both states, and it regularly conducts business in both states. According to the record, all of the plaintiff's medical treatment was rendered in Missouri. Due to the demands of their profession, medical providers rarely testify live at a trial. Realistically, whether this case is tried in Missouri or Illinois, it is probable that the medical testimony will be presented through evidence depositions or video depositions. On this record, it is difficult to discern the existence and the residence of occurrence witnesses who might be called to testify. Neither party specifically named any occurrence witnesses. In its motion, the railroad named two supervisors who might be called, and it asserted that any witnesses (coworkers) to the plaintiff's work activities "would be located" in Missouri near the

locations where the plaintiff worked. In making this assertion, the railroad fails to account for those coworkers who worked with the plaintiff in Illinois for more than a year. Even if the assertion is accepted, I note that the railroad has given no assurances that the supervisors and the unidentified coworkers are permanently stationed in Missouri or that they will be present in Missouri at the time of the trial, and given the transitory nature of the work, it is unreasonable to assume that would be the case. Further, there is no evidence in the record to indicate that coworkers could not be temporarily assigned, without undue hardship, to the railroad's Metro East facilities at the time of the trial. In short, the railroad has not shown that the witnesses and documents necessary to the trial of the controversy can be more conveniently produced in Missouri. See *Brummett*, 111 Ill. 2d at 504, 490 N.E.2d at 699; *Weaver v. Midwest Towing, Inc.*, 116 Ill. 2d 279, 289, 507 N.E.2d 838, 842 (1987). Further, the supervisors and any necessary coworkers can be propounded by means of a Rule 237(b) notice (166 Ill. 2d R. 237(b)). Although live testimony is usually preferred, advances in technology have made sophisticated video-deposition presentations an acceptable, though admittedly not equal, alternative where professional and lay witnesses are unavailable. The circuit courts in Missouri or Illinois, upon proper petition, have the authority to issue subpoenas to compel its citizens to appear for a deposition that may be used in a sister state's legal proceedings. See Mo. R. Civ. Proc. R. 57.08 (2002); 166 Ill. 2d R. 204(b). Assuming that the conditions have not changed in the railroad yards, a representative view of the premises could be had in either Illinois or Missouri, because the allegations regarding the unsafe working conditions are consistent and not dependent on the particular work site. Though it is not particularly weighty, it bears mentioning that the counsel of record have offices in Illinois.

The citizens of Missouri and Illinois appear to have equal interests in ensuring that both parties receive a fair trial. The citizens of each state share an interest in seeing that corporate guests who conduct business in their respective states behave responsibly. If a worker is injured in Illinois as a result of the alleged negligence of its corporate guest, the citizens of Illinois have an interest in deciding the controversy and in awarding fair compensation should the allegations prove true. The same would be true of the citizens of Missouri. Consequently, jury duty would not impose a burden on the respective citizens of either state. As to the court congestion, my colleagues have chosen to compare Madison County with only one possible venue in Missouri. It appears that St. Louis, Missouri, would be another available forum, and there is no information on the congestion of that

court's docket. I would further note that the oft-cited "average delay" statistic may be a misleading measure because the number tells us nothing about the types and the complexities of the cases on the docket and the number of judges and jurors available to try additional cases.

After considering the totality of the circumstances, I conclude that the railroad has not met its burden to show that private- and public-interest factors *strongly* favor a Missouri forum over an Illinois forum. The circuit court did not abuse its discretion in denying the railroad's motion to dismiss this action.

For the foregoing reasons, I respectfully dissent.